UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| ELIJAH WILSON, <br><br>                Movant, <br><br>     vs. <br><br> UNITED STATES OF AMERICA, <br><br>                Respondent. | 4:17-CV-04044-KES <br><br><br> REPORT AND RECOMMENDATION |

## INTRODUCTION

This matter is pending before the court on movant Elijah Wilson's *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  See Docket No. 1.[1]  Pending is a motion to dismiss by the respondent the United States of America ("government").  See Docket No. 27.  This matter was referred to this magistrate judge pursuant to the October 16, 2014, standing order of the Honorable Karen E. Schreier, district judge, and 28 U.S.C. § 636(b)(1)(A) & (B).

## FACTS

**A.    Pre-Plea Proceedings**

Mr. Wilson was indicted by a grand jury on April 8, 2014, on a single count of commercial sex trafficking in violation of 18 U.S.C. §§ 1591 and

---

[1] The court cites to documents filed in Mr. Wilson's civil § 2255 case by simply citing their number in the court's docket.  Documents on file in Mr. Wilson's underlying criminal case are cited to "CR" followed by the court's docket number associated with that document.

1594(a).  See United States v. Wilson, CR 14-40038 (hereinafter "CR"), Docket No. 2 (D.S.D.).  He made his initial appearance in court on the indictment on April 10, 2014, at which time the court appointed attorney Timothy J. Langley of the Federal Public Defender's Office to represent Mr. Wilson.  See CR Docket No. 10.  Three weeks later, Mr. Wilson requested the court appoint a different lawyer to represent him.  See CR Docket No. 19.  After considering Mr. Wilson's concerns at an *ex parte* hearing the motion was denied.  See CR Docket Nos. 19 & 20.

**B.     Plea Agreement and Change of Plea Hearing**

The parties reached a plea agreement.  The written plea agreement required Mr. Wilson to enter a plea of guilty to a superseding information charging him with attempting to transport a minor for the purpose of engaging in illicit sexual conduct in violation of 18 U.S.C. § 2423(b) and (e).  See CR Docket No. 46, p. 2, ¶ C.  This charge had a maximum sentence of incarceration of 30 years, but no mandatory minimum sentence like the original charge in the indictment.[2]  Compare 18 U.S.C. § 2423(b) (30 years' imprisonment), with 18 U.S.C. § 1591(b) (setting forth mandatory minimum terms of incarceration of 10 or 15 years, depending on whether the child had attained the age of 14).

As part of the plea agreement, the government agreed Mr. Wilson should get credit in the United States Sentencing Guidelines (USSG) calculation for acceptance of responsibility.  See CR Docket No. 46 at p. 3, ¶ E.  Furthermore,

---

[2] Subsection (e) of § 2423 merely established that an attempt would be punished the same as a completed violation.  See 18 U.S.C. § 2423(e).

2

the government agreed to recommend a sentence within the USSG range.  Id. at p. 4-5, ¶ F.  The parties stipulated to a base offense level of 24 under the USSG.  Id. at p. 5, ¶ G.  Mr. Wilson agreed to waive all defenses and his right to appeal any non-jurisdictional issues except an upward departure or variance. Id. at p. 10, ¶ Q.

The pertinent part of the written statement of factual basis in support of the plea stated as follows:

> On or about March 20, 2014, at Sioux Falls, in the District of South Dakota and elsewhere, the defendant, Elijah Wilson, a/k/a "elijahwilson1989@gmail.com", did knowingly attempt to travel in interstate commerce for the purpose of engaging in illicit sexual conduct with a minor who had not attainted the age of 18 years, and which conduct would be in violation of Chapter 109A (namely section 2243(a), sexual abuse of a minor or ward) if the sexual act occurred in the territorial jurisdiction of the United States, all in violation of 18 U.S.C. §§ 2423(b) and (e).

See CR Docket No. 52.

A change of plea hearing was held on March 23, 2015.  Mr. Wilson was present and so was his counsel.  See CR Docket No. 106 at p. 2.  Mr. Wilson was placed under oath at the very beginning of that hearing.  Id.

In response to questions from the district court, Mr. Wilson testified under oath that he was 25 years old at the time, that he graduated from high school and completed two years of college, that he had not recently been treated for any mental illness or addiction, and that he was not at that time under the influence of any drug, medication or alcohol.  Id. at pp. 2-3.

Mr. Wilson told the court under oath he had read and discussed the amended superseding information and plea agreement with counsel.  Id. at

3

pp. 3-4.  Mr. Wilson stated he understood those documents.  Id. at p. 4.
Mr. Wilson told the court he was fully satisfied with counsel's advice and
representation in his case.  Id.

The court advised Mr. Wilson he had a right to plead not guilty and to
have a jury trial.  Id. at p. 9.  At the trial, the court stated the government
would have to prove its charges against Mr. Wilson beyond a reasonable doubt.
Id.  The court told Mr. Wilson he would have the right to the assistance of his
lawyer at trial and that one would be appointed for him if he could not afford to
hire one himself.  Id.  The court told Mr. Wilson at trial he would have the right
to confront and cross-examine all the government's witnesses.  Id.  The court
advised Mr. Wilson he did not have to put on evidence at trial, but he could do
so if he chose.  Id. at pp. 9-10.  The court advised Mr. Wilson he would have
the right to use the court's subpoena power to compel his witnesses to attend
the trial.  Id.  The court advised Mr. Wilson he did not have to testify at his
trial, but he could choose to do so if he wished.  Id.

The court told Mr. Wilson if he pleaded guilty, he would be giving up his
right to a trial.  Id. at p. 10.  Mr. Wilson told the court he understood all this.
Id.  The court then told Mr. Wilson if he went to trial, the government would
have to prove beyond a reasonable doubt the crime of attempted interstate
travel for the purpose of engaging in illicit sexual contact with a person under
the age of 18.  Id.  In order to prove an attempt, the court told Mr. Wilson the
government would have to show Mr. Wilson voluntarily and intentionally
carried out some act which was a substantial step toward the goal of traveling

4

in interstate commerce for the purpose of engaging in illicit sexual conduct with someone under 18 years of age.  Id.  Mr. Wilson told the court under oath he understood what he was charged with and he understood what the government would have to prove if he went to trial.  Id. at pp. 10-11.

The court asked Mr. Wilson if he had read the statement of factual basis and whether everything stated in that document was the truth.  Id. at p. 11. Mr. Wilson affirmed he had read the statement and it was true.  Id.  The court found the statement of factual basis established an independent basis in fact for the plea.  Id.  Mr. Wilson then entered a plea of guilty to the amended superseding information.  Id.

The court then made the following finding:

It is the finding of the Court in the case of United States v. Elijah Wilson, that the Defendant is fully competent and capable of entering an informed plea, that he is aware of the nature of the charges and the consequences of the plea, and that the plea of guilty is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense.

Id. at pp. 11-12.  The court then accepted Mr. Wilson's guilty plea.  Id.

## C.    Post-Plea Proceedings

The district court sentenced Mr. Wilson on July 16, 2015, to 46 months' imprisonment and 5 years' supervised release.  See CR Docket No. 74 and 76. Mr. Wilson filed a *pro se* notice of appeal on October 6, 2015.  See CR Docket No. 85.  The appeal was dismissed on April 18, 2016, upon Mr. Wilson's own motion.  See CR Docket Nos. 115-116.

**D.     Mr. Wilson's § 2255 Motion**

Mr. Wilson filed with this court his motion to vacate, set aside or correct his sentence on March 30, 2017.  See Docket No. 1.  He essentially raises a single argument, invoking two constitutional provisions.  Mr. Wilson asserts the crime he pleaded guilty to defines "sexual act" by reference to a different statute (unnamed by Mr. Wilson), which defines "sexual act" as "sexual abuse resulting in death."  Id. at p. 5.  Mr. Wilson argues that he never traveled interstate for the purpose of engaging in a sexual act resulting in death, so an essential element of the crime he pleaded guilty to was missing.  Id.  This fact, Mr. Wilson asserts, violated his Fifth Amendment Due Process rights because there was no factual basis for a plea to an act where death was anticipated.  He also argues he was deprived of his Sixth Amendment right to effective assistance of counsel because he lawyer recommended he plead guilty to a crime for which no facts supported one of the essential elements of the crime.  Id.

The government now moves to dismiss Mr. Wilson's motion for failure to state a claim upon which relief can be granted.  See Docket No. 27.  Mr. Wilson resists the motion.

## DISCUSSION

**A.     Standard Under Rule 12(b)(6)**

The government's motion is made pursuant to Fed. R. Civ. P. 12(b)(6) and Rule 12 of the Rules Governing Habeas Actions.  These rules allow dismissal of a pleading if the movant has failed to state a claim upon which relief can be

granted.  Movants must plead "enough facts to state a claim to relief that is *plausible* on its face."  Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)(emphasis added).

Under Federal Rule of Civil Procedure 8(a)(2), a movant must plead only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Id. at 554-55 (quoting FED. R. CIV. P. 8(a)(2)).  A complaint does not need "detailed factual allegations" to survive a motion to dismiss, but a movant must articulate the grounds upon which he seeks relief and cannot merely recite the elements of his cause of action.  Id. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).  There is also a "plausibility standard" which "requires a complaint with enough factual matter (taken as true)" to support a conclusion that the movant has a valid claim.  Id. at 556.  The movant's motion must contain sufficiently specific factual allegations in order to cross the line between "possibility" and "plausibility" of entitlement to relief.  Id.

There are two "working principles" that apply to Rule 12(b)(6) motions.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  First, courts are not required to accept as true legal conclusions "couched as factual allegation[s]" contained in a motion.  Id. (citing Papasan, 478 U.S. at 286).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. (quoting Twombly, 550 U.S. at 555).  Rule 8 "does not unlock the doors of discovery for a [movant] armed with nothing more than conclusions."  Iqbal, 556 U.S. at 678-79.

Second, the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679 (quoting decision below Iqbal v. Hasty, 490 F.3d 143, 157-158 (2d Cir. 2007)). Where the movant's allegations are merely conclusory, the court may not infer more than the mere possibility of misconduct, and the complaint has *alleged* "but has not 'show[n]' " that he is entitled to relief as required by Rule 8(a)(2). Iqbal, 556 U.S. at 679 (emphasis added).

The Court explained that a reviewing court should begin by identifying statements in the motion that are conclusory and therefore not entitled to the presumption of truth. Id. at 679-680. Legal conclusions must be supported by factual allegations demonstrating the grounds for a movant's entitlement to relief. Id. at 679; Twombly, 550 U.S. at 555; FED. R. CIV. P. 8(a)(2). A court should assume the truth only of "well-pleaded factual allegations," and then may proceed to determine whether the allegations "plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

Rule 12(b)(6) requires the court to evaluate the sufficiency of a *plaintiff's pleading* of a claim. See FED. R. CIV. P. 12(b)(6); Iqbal, 556 U.S. at 679. Thus, the primary document the court examines is the plaintiff's initial pleading. Rule 56, the rule for summary judgment, allows the court to consider affidavits, documents, deposition transcripts and other items extraneous to the complaint in determining whether to grant the motion. See FED. R. CIV. P. 56. In this district, a summary judgment motion also requires the movant to file a statement of undisputed material facts. See DSD L.R. 56.1A. Respondents did

not file a statement of undisputed material facts in support of their motion to dismiss, so it cannot be construed to be a summary judgment motion.

Courts evaluating a Rule 12(b)(6) motion are not strictly limited to evaluating only the complaint, however.  Dittmer Properties, L.P. v. F.D.I.C., 708 F.3d 1011, 1021 (8th Cir. 2013).  They may consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned."  Id. (citing Miller v. Redwood Toxicology Lab., Inc., 688 F.3d 928, 931 n.3 (8th Cir. 2012) (quoting 5B Charles A. Wright & Arthur R. Miller, Fed. Practice & Procedure § 1357 (3d ed. 2004))).

In a habeas action, the settled record of the underlying proceedings is appropriate for the court to take judicial notice of when evaluating a motion to dismiss.  See Hood v. United States, 152 F.2d 431 (8th Cir. 1946) (federal district court may take judicial notice of proceedings from another federal district court); Matter of Phillips, 593 F.2d 356 (8th Cir. 1979) (proper for federal court to take judicial notice of state court pleadings); Green v. White, 616 F.2d 1054 (8th Cir. 1980) (court of appeals may take judicial notice of district court filings).  This court has taken judicial notice of Mr. Wilson's underlying criminal file and his direct appeal file.  These are the principles guiding the court's evaluation of respondents' motion.

**B.    Timeliness of Mr. Wilson's § 2255 Motion**

Motions under § 2255 are subject to a one-year statute of limitation that

runs from the *latest* of four specified dates:

(f)  A 1-year period of limitation shall apply to a motion under this section.  The limitation period shall run from the latest of--

(1)    the date on which the judgment of conviction becomes final;

(2)    the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3)    the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4)    the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

See 28 U.S.C. § 2255(f).  Only one of the above dates is relevant here—"the date

on which the judgment of conviction becomes final."  Id.

A conviction becomes final when the time period for filing a notice of

appeal expires.  Anjulo-Lopez v. United States, 541 F.3d 814, 816 (8th Cir.

2008); United States v. Gilbert, 807 F.3d 1197, 1199 (9th Cir. 2015); United

States v. Booker, 564 F. Supp. 2d 7, 12-13 (D.D.C. 2008).  Mr. Wilson's

judgment of conviction was filed on July 17, 2015.  See CR 14-40038, Docket

No. 76.  He had 14 days to appeal that conviction.  See FED. R. APP. P. 4(b)(1).

Thus, Mr. Wilson's conviction became final on July 31, 2015, 14 days following

the entry of his judgment.  Gilbert, 807 F.3d at 1199; Booker, 564 F. Supp. 2d

at 12-13.  The statute of limitations for filing a § 2255 motion began running

10

after these 14 days expired.  <u>Gilbert</u>, 807 F.3d at 1200 (§ 2255 limitations

period begins to run as soon as the time for appeal under FED. R. APP. P. 4

expires).

Mr. Wilson then filed an untimely notice of appeal on October 1, 2015.[3]

<u>See</u> CR Docket No. 85.  Mr. Wilson voluntarily dismissed his direct appeal on

April 18, 2016.[4]  <u>See</u> <u>United States v. Wilson</u>, No. 15-03257 (8th Cir. Apr. 18,

2016).

There is some confusion on the issue in the Eighth Circuit whether an

untimely appeal can serve to toll the running of the statute of limitations for a

habeas action.  The Supreme Court has held that the filing of an appeal tolls

the habeas statute of limitations *if* the appeal is timely.  <u>Carey v. Saffold</u>, 536

U.S. 214, 219-21, 225 (2002).  In <u>Streu v. Dormire</u>, 557 F.3d 960, 966 (8th Cir.

2009), however, a case involving 28 U.S.C. § 2254, the Eighth Circuit tolled the

running of the habeas statute of limitations for an *untimely* appeal which the

---

[3] The actual date Mr. Wilson filed his notice of appeal was October 6, 2015.
<u>See</u> CR Docket No. 85.  However, under the mailbox rule, a *pro se* prisoner's
petition for a writ of habeas corpus is filed on the date it is delivered to prison
authorities for mailing to the clerk of the court.  <u>Nichols v. Bowersox</u>, 172 F.3d
1068, 1077 (8th Cir. 1999) <u>abrogated on other grounds</u> by <u>Riddle v. Kemna</u>,
523 F.3d 850 (8th Cir. 2008).  To invoke the prison mailbox rule, petitioner
must file an affidavit or notarized statement that shows the date on which he
delivered his pleading to prison authorities.  <u>Porchia v. Norris</u>, 251 F.3d 1196,
1198 (8th Cir. 2001).  Here, Mr. Wilson has not filed such an affidavit, but the
court strives in its statute of limitations analysis to give Mr. Wilson the benefit
of the doubt in all calculations.  Here, Mr. Wilson's envelope containing the
notice of appeal was postmarked October 1, 2015.  Hence, the court gives
Mr. Wilson the benefit of the earlier date.

[4] Mr. Wilson waived his right to appeal as part of his plea agreement.  <u>See</u> CR
Docket No. 46 at p. 10, ¶ Q.

state court allowed to be filed out of time.  Rather than resolving this issue about whether an untimely appeal can toll the limitations period, this court gives Mr. Wilson the benefit of the doubt and assumes that the limitations period was tolled in his case by the filing of his untimely appeal.

Following dismissal of his direct appeal, Mr. Wilson then filed his § 2255 motion before this court on March 25, 2017.[5]  By this court's calculation, even assuming the untimely appeal served to toll the running of the statute of limitations, 401 days had expired on the limitations period, which would make Mr. Wilson's motion untimely.  The court's calculation is as follows:

| | |
|---|---|
| Conviction Becomes Final | July 31, 2015 |
| Limitations Period Begins | August 1, 2015 |
| Days Expired from 08/01/15 to 10/01/15: | 61 |
| Tolling from 10/1/15 to 4/18/16 due to appeal | |
| Days Expired from 4/19/16 to 3/25/17: | <u>340</u> |
| **TOTAL DAYS EXPIRED:** | **<u>401</u>** |

The Tenth Circuit was faced with a similar factual situation in <u>United States v. Terrones-Lopez</u>, 447 Fed. Appx. 882, 2011 WL 5865972 (10th Cir. Nov. 23, 2011).  In that case, the defendant had filed notices of appeal outside the time period set by FED. R. APP. P. 4(b).  <u>Id.</u> at *1.  The court of appeals dismissed the appeals, the first one after five months, the second one after one

---

[5] The actual date Mr. Wilson's § 2255 motion was filed was March 30, 2017. However, again, the court strives to give him the benefit of every doubt.  The § 2255 motion was dated March 25, 2017.  Applying the prison mailbox rule, the court assumes Mr. Wilson filed his motion the same date as the date on the document itself.

month.  Id.  The defendant then filed a § 2255 motion more than a year after his conviction had become final.  Id.  The court held the defendant's conviction became final when his time for filing a timely notice of appeal expired.  Id. at *2.  The court specifically held the defendant's untimely notices of appeal had not acted to toll the habeas statute of limitations.  Id. at *3.  Therefore, the court refused to issue a certificate of appealability on the district court's dismissal of the § 2255 motion as it was clearly untimely.  Id.

A district court in the Eighth Circuit faced a similar factual situation and came to the same conclusion.  In Terry v. United States, 2006 WL 1772489, *1 (E.D. Ark. Jun. 26, 2006), the defendant did not initially file a direct appeal, but then filed a motion to take an untimely appeal many months after his initial appeal period had expired.  The court denied the motion to take an untimely appeal four months after it was made.  Id.  The defendant then filed a § 2255 motion more than one year after the date his appeal period had expired. Id.  The petitioner argued his § 2255 limitations period was tolled while he was seeking permission to appeal, characterizing this time period as a time when his case "remained potentially eligible for 'direct review' in a possible appeal." Id. at *2.  The court held that no statutory tolling of the limitations period took place while the petitioner sought to assert an untimely appeal.  Id.

Also, in Heizman v. United States, 2014 WL 3907783 at *1 (W.D. Mo. Aug. 11, 2014), a defendant was sentenced and filed no direct appeal within the 14-day appeal period.  Approximately 3 weeks after his conviction became final (when his time to appeal expired), he filed an untimely notice of appeal.

13

Id.  The Eighth Circuit appointed counsel to represent Heizman in his appeal; counsel later moved to withdraw, the Eighth Circuit granted the motion, and dismissed the appeal.  Id. at *5.  Heizman then filed a § 2255 motion outside the one-year period extending from the expiration of his initial time to appeal. Id.  The court held his § 2255 petition was untimely, refusing to toll the limitations period during the period Heizman's untimely appeal was pending. Id. at *4-5.  The court rejected Heizman's argument that the Eighth Circuit implicitly granted him permission to file his § 2255 motion out of time by taking his direct appeal.[6]  Id.

The Streu case, cited above, is distinguishable.  In that § 2254 case, the Eighth Circuit held an untimely state court appeal *did* toll the running of the statute of limitations, however, the state court had affirmatively ruled that the untimely appeal would be considered on the merits.  Streu, 557 F.3d at 966. In Mr. Wilson's case, there is no affirmative ruling from the Eighth Circuit that it would excuse the untimeliness of his appeal and consider his case on the merits.  Instead, Mr. Wilson's appeal was terminated before the Eight Circuit could render a decision by Mr. Wilson's dismissal of that appeal.

The above-discussed decisions did not give the petitioners before them any statutory tolling while their untimely appeals were pending.  As discussed

---

[6] The above-discussed cases are distinguishable from those circumstances in which a petitioner files a *timely* appeal.  See, e.g. United States v. Sylvester, 258 Fed. Appx. 411, 2007 WL 4395652 at *1 (3d Cir. Dec. 14, 2007) (tolling the statute of limitations in a § 2255 case where the petitioner had filed a timely direct appeal and then voluntarily dismissed the appeal).  As the Supreme Court established in Carey, a *timely* appeal does toll the limitations period. Carey, 536 U.S. at 219-21, 225.

above, even if this court *does* give Mr. Wilson the benefit of tolling the statute of limitations while his untimely appeal was pending, this court still calculates that more than one year passed before Mr. Wilson filed his instant § 2255 motion.

The § 2255 habeas statute of limitations is subject to equitable tolling. Holland v. Florida, 560 U.S. 631, 650 (2010); United States v. Martin, 408 F.3d 1089, 1092 (8th Cir. 2005). A petitioner may toll the statute of limitations by showing "(1) he has been diligently pursuing his rights and (2) an extraordinary circumstance stood in his way." White v. Dingle, 616 F.3d 844, 847 (8th Cir. 2010) (citing Holland, 560 U.S. at 649). The burden is on the petitioner to demonstrate circumstances exist for equitable tolling. Holland, 560 U.S. at 650; Martin, 408 F.3d at 1092. Mr. Wilson makes no showing that would entitle him to equitable tolling. Therefore, this court concludes his § 2255 motion is untimely.

Though this court recommends dismissing Mr. Wilson's § 2255 motion as untimely, the court will address the merits of his claims so as to provide a complete analysis for future reviewing courts.

## C.      Scope of a § 2255 Motion

Section 2255 of Title 28 of the United States Code was enacted to supersede habeas corpus practice for federal prisoners. Davis v. United States, 417 U.S. 333, 343-44 (1974). Prior to the enactment of § 2255, habeas claims had to be brought in the district where the prisoner was confined, resulting in overburdening those districts where federal correctional institutions were

15

located and presented logistical issues because the record in the underlying criminal case were often in a distant location.  United States v. Hayman, 342 U.S. 205, 212-16 (1952).  The enactment of § 2255 resolved these issues by requiring that the motion be filed in the sentencing court.  Id.

The scope of a § 2255 motion is seemingly broader than the scope of a habeas petition, the latter of which is typically limited to allegations of a constitutional dimension.  Section 2255 allows a federal prisoner to "vacate, set aside or correct" a federal sentence on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  See 28 U.S.C. § 2255.  Where the allegation for relief is *not* based on a violation of a Constitutional or federal statutory right or an assertion that the court was without jurisdiction, the Supreme Court has read a "fundamentality" requirement into § 2255--relief is available for only those errors which constitute a "fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure."  Hill v. United States, 368 U.S. 424, 428 (1962); see Peguero v. United States, 526 U.S. 23, 27-30 (1999).

Generally, petitioners are precluded from asserting claims pursuant to § 2255 that they failed to raise on direct appeal.  United States v. Frady, 456 U.S. 152, 167-68 (1982); McNeal v. United States, 249 F.3d 747, 749 (8th Cir. 2001).  When a § 2255 petitioner asserts a claim that is procedurally defaulted

16

because it was not raised on direct appeal, the claim can only proceed after the petitioner has shown either:  (1) actual innocence or (2) that the procedural default should be excused because there was both cause for the default and actual prejudice to the petitioner.  Bousley v. United States, 523 U.S. 614, 621-22 (1998); McNeal, 249 F.3d at 749.  Therefore, barring a claim of actual innocence, a petitioner must show both cause for why he failed to raise an issue on direct appeal as well as actual prejudice caused by the alleged errors.

Appellate courts generally refuse to review claims of ineffective assistance of counsel on direct appeal; such claims are, therefore, properly addressed in a 28 U.S.C. § 2255 motion.  See United States v. Campbell, 764 F.3d 880,892-93 (8th Cir. 2014); United States v. Lee, 374 F.3d 637, 654 (8th Cir. 2004) (ineffective assistance of counsel claims are not generally cognizable on direct appeal and will be heard only to prevent a miscarriage of justice or in cases where the district court has developed a record on the issue).  Therefore, no procedural default analysis is required before examining a movant's claims of constitutionally-deficient counsel.

**D.    Scope of Issues When a Plea Was Entered**

When a § 2255 petitioner has been convicted in his direct criminal proceedings by entering a guilty plea, the scope of issues available to him to be raised in habeas proceedings is curtailed.  As the Supreme Court has stated:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.  He may

17

only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in [McMann v. Richardson, 397 U.S. 759 (1970)].

A guilty plea, voluntarily and intelligently entered, may not be vacated because the defendant was not advised of every conceivable constitutional [issue] he might have to the charge, no matter how peripheral such a plea might be to the normal focus of counsel's inquiry. And just as it is not sufficient for the criminal defendant seeking to set aside such a plea to show that his counsel in retrospect may not have correctly appraised the constitutional significance of certain historical facts, . . . it is likewise not sufficient that he show that if counsel had pursued a certain factual inquiry such a pursuit would have uncovered a possible constitutional infirmity in the proceedings.

Tollett v. Henderson, 411 U.S. 258, 267 (1973).

The Supreme Court has explained why a guilty plea cuts off all constitutional claims that predate a plea. Pleas are necessarily based on imperfect knowledge of the law and facts—one can only know what the result of a full-blown jury trial will be after the trial has been had, and even then, truth is still often in dispute. McMann, 397 U.S. 769-70. If a defendant admits his commission of a crime, upon good faith, reasonably competent advice from his counsel, the defendant assumes the risk that his attorney might be wrong about the facts or the outcome of a legal issue. Id. at 774.

The issue presented in habeas proceedings is not whether—in retrospect--counsel was right or wrong about a certain fact or legal analysis, but rather, whether the defendant's plea was made voluntarily and intelligently and upon advice from his attorney that was "within the range of competence demanded of attorneys in criminal cases." Id. at 770-71. Therefore, a defendant who pleaded guilty because of a prior coerced confession that he

18

believed would be used against him at trial is not entitled to an evidentiary hearing in a habeas proceeding without showing other, extenuating circumstances.  Id. at 771.

A voluntary and knowing plea is not transformed into a coerced plea simply because the defendant pleaded guilty to obtain a lesser sentence than the maximum possible penalty that would have been applicable if defendant had been convicted at trial.  Brady v. North Carolina, 397 U.S. 742, 751 (1970); Parker v. North Carolina, 397 U.S. 790, 795 (1970).  Guilty pleas are valid if the court record affirmatively discloses the plea was both voluntary and intelligent.  Boykin v. Alabama, 395 U.S. 238, 242 (1969).

A plea is voluntary if it is made by a defendant who is "fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel," and so long as the plea was not induced by threats, misrepresentation, or by promises that are improper, unfulfilled, or unfulfillable.  Brady, 397 U.S. at 755.

A plea is intelligently made if the defendant was aware of the nature of the charge against him, and he was mentally competent and in control of his mental faculties.  Brady, 397 U.S. at 756.  A plea is not rendered unintelligently made simply because, long after the plea was entered, the defendant realizes his cost-benefit analysis as to whether to go to trial or to plead guilty did not correctly take into account every relevant factor which entered into his decision.  Id. at 756-57.

19

Where a habeas petitioner collaterally attacks his plea by arguing that counsel was ineffective in advising petitioner to plead guilty, the petitioner must show not only that his counsel's performance was deficient, he must also show that he was prejudiced by counsel's substandard advice.  Hill v. Lockhart, 474 U.S. 52, 58-59 (1985) (quoting Strickland v. Washington, 466 U.S. 668 (1984)).  In the context of a guilty plea, in order for a habeas petitioner to demonstrate prejudice under Strickland, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Hill, 474 U.S. at 59.

Where the allegation of ineffectiveness centers on a "failure to investigate or discover potentially exculpatory evidence, the determination whether the error 'prejudiced' the [petitioner] by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea."  Id.  "This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial."  Id.  "[T]hese predictions of the outcome at a possible trial, where necessary, should be made objectively, without regard for the 'idiosyncrasies of the particular decisionmaker.' "  Id. (quoting Strickland, 466 U.S. at 695).

**E.    Sixth Amendment Right to Effective Assistance of Counsel**

**1.    Strickland**

The Sixth Amendment of the Constitution of the United States affords a criminal defendant with the right to assistance of counsel.  The Supreme Court "has recognized that 'the right to counsel is the right to effective assistance of counsel.'" Strickland v. Washington, 466 U.S. 668, 698 (1984) (citing McMann v. Richardson, 397 U.S. 759, 771, n.14 (1970)).  Strickland is the benchmark case for determining if counsel's assistance was so defective as to violate a criminal defendant's Sixth Amendment rights and require reversal of a conviction.  Id. at 687.  "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-688.  The defendant must also show that counsel's unreasonable errors or deficiencies prejudiced the defense and affected the judgment.  Id. at 691.  The defendant must show "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695.  In sum, a defendant must satisfy the following two-prong test:

> First, the defendant must show that counsel's performance was
> deficient.  This requires showing that counsel made errors so
> serious that counsel was not functioning as the "counsel"
> guaranteed the defendant by the Sixth Amendment.  Second, the
> defendant must show that the deficient performance prejudiced the
> defense.  This requires showing that counsel's errors were so
> serious as to deprive the defendant of a fair trial, a trial whose
> result is reliable.  Unless a defendant makes both showings, it
> cannot be said that the conviction or death sentence resulted from

a breakdown in the adversary process that renders the result
unreliable.

Id. at 687.

"There is a presumption that any challenged action was sound trial
strategy and that counsel rendered adequate assistance and made all
significant decisions in the exercise of professional judgment." Hall v.
Luebbers, 296 F.3d 685, 692 (8th Cir. 2002).  It is the petitioner's burden to
overcome this presumption, and a "petitioner cannot build a showing of
prejudice on a series of errors, none of which would by itself meet the prejudice
test." Id.  Judicial scrutiny of attorney performance is highly deferential, with a
strong presumption that counsel's conduct falls within the range of reasonable
professional conduct. Strickland, 466 U.S. at 698.

## 2. Application of **Strickland** to Mr. Wilson's Claim

Mr. Wilson's claim of ineffective assistance of counsel centers on his
allegation that he pleaded guilty to a crime for which there were no facts to
support an essential element of the crime. See Docket No. 1 at p. 5.
Specifically, Mr. Wilson alleges the term "illicit sexual conduct" as that term is
used in 18 U.S.C. § 2423(b), requires evidence that he traveled interstate for
the purpose of engaging in a sexual act resulting in death. Id.  Since he never
intended anyone's death, Mr. Wilson alleges his counsel was ineffective in
recommending he plead guilty to this crime. Id.  This claim, if it were true,
would tend to undermine the voluntary and intelligent nature of Mr. Wilson's
plea.  As such, even though Mr. Wilson pleaded guilty in his underlying

22

criminal case, consideration of the claim on the merits is not precluded. McMann, 397 U.S. at 770-71.

Section 2423, the statute Mr. Wilson pleaded guilty to, defines "illicit sexual conduct" as a "sexual act" with someone under the age of 18 if that act would be in violation of chapter 109A. "Sexual act" is defined under 18 U.S.C. § 2246. See 18 U.S.C. § 2423(f)(1) (referring reader to § 2246 for definition of "sexual act"). Section 2246 defines "sexual act." See 18 U.S.C. § 2246(2). That definition does not require an intent to cause death.[7]

Section 2423, the statute Mr. Wilson pleaded guilty to, also defines "sexual act" as a commercial sex act as defined by 18 U.S.C. § 1591, the statute under which Mr. Wilson was originally charged by indictment. See 18 U.S.C. § 2423(f)(2). Section 1591 defines "commercial sex act" as "any sex act [defined by § 2246(2)], on account of which anything of value is given to or received by any person." See 18 U.S.C. § 1591(e)(3). Neither definition of "illicit sexual conduct" requires an intent to cause death.

The factual basis for Mr. Wilson's claim of ineffective assistance is that counsel recommended a plea to a crime Mr. Wilson did not commit. As discussed, that factual basis is in error. It follows, then, that counsel's performance was not deficient. It is Mr. Wilson who is in error in reading the statute of conviction, not his counsel. Furthermore, since Mr. Wilson's reading

---

[7]"Sexual act" is defined as contact between the penis and vulva or anus with penetration however slight; contact between the mouth and the penis, vulva, or anus; penetration of the anal or genital opening digitally with an intent to abuse, humiliate, harass, degrade, or arouse; or bare-skin touching of the genitalia of someone under the age of 16 with the same intent. See 18 U.S.C. § 2246(2).

of the statute is in error, he cannot prove prejudice.  The court recommends denying Mr. Wilson's claim for relief based upon ineffective assistance of counsel.

## F.    Fifth Amendment Due Process Claim

Mr. Wilson's due process claim is that the district court violated his due process rights by taking his guilty plea without explaining that an intent to cause death was an element of the crime and without any factual basis for that "element" of the crime.  As explained above, Mr. Wilson is in error in his interpretation of the statute and its definition of "illicit sexual conduct." Therefore, this claim fails for the same reasons discussed above.

## G.    No Evidentiary Hearing is Warranted

A § 2255 motion can be denied without holding an evidentiary hearing if (1) the movant's allegations, even if true, would not entitle him to relief; or (2) the movant's allegations cannot be taken as true because they are contradicted by the record, they are inherently incredible, or they are conclusions rather than factual statements.  Hyles v. United States, 754 F.3d 530, 534 (8th Cir. 2014).  "If [the court] can determine from the motion and the supporting record in the case that [the movant] is not entitled to § 2255 relief, then no hearing was, or is now, required."  Saunders v. United States, 236 F.3d 950, 952 (8th Cir. 2001).

Here, the court concludes that no evidentiary hearing is warranted. Mr. Wilson has failed to demonstrate the basic premise of his claim, which involves statutory interpretation, a classic issue of law for the court to

24

determine.  There is no issue of fact or credibility to be determined by holding an evidentiary hearing.  Therefore, the court recommends no such hearing be held.

## CONCLUSION

Based on the foregoing facts, law and analysis, this magistrate judge respectfully recommends that the government's motion to dismiss [Docket No. 27] be granted and that Mr. Wilson's motion to vacate, set aside, or correct [Docket Nos. 1] be denied.  It is further recommended that Mr. Wilson's other pending motions [Docket Nos. 29, 32, 34, 36, 40, 43 and 44] be denied as moot.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the district court.  Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).


DATED January 2, 2018.

                              BY THE COURT:


                              VERONICA L. DUFFY
                              United States Magistrate Judge


25